# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ALICE BELCHER,

                       Plaintiff,

v.

SPRINGFIELD COLLEGE,

                       Defendant.

Case No. 17-CV-1086-JPS

**ORDER**

      This case concerns claims of unlawful discrimination and retaliation brought by Alice Belcher ("Belcher") against her former employer, Springfield College ("Springfield"). Before the Court are two related motions: Springfield's motion for partial dismissal of the first amended complaint, (Docket #20), and Belcher's motion for leave to file a second amended complaint, (Docket #27). The motions are fully briefed and, for the reasons stated below, both will be denied in large measure.

**1.    LEGAL STANDARD**

      Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of complaints which fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). In reviewing the complaint, the Court is required to

"accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* at 480–81.

## 2. RELEVANT FACTS

The following facts are drawn from the first amended complaint, which is presently the operative complaint in this case.

Belcher, an African-American female who is over forty years old, began working for Springfield in May 2012 as an adjunct instructor at the school's Milwaukee campus. She received "consistent" assignments to teach classes within her expertise (their frequency is not given) until Antonio Guajardo ("Guajardo") was hired as the dean of Springfield's Milwaukee campus. (Docket #17 ¶ 11). Once he took over, there was a "consistent decline" in the number of classes offered to Belcher to teach. *Id.* She claims that "[m]ore and more of the contracts were being offered to individuals outside Plaintiff's protected classes." *Id.*

In March 2015, Guajardo offered Belcher the Early Childhood Education class to teach in fall of that year. In June, Belcher applied for the position of adjunct lecturer for the newly created Early Childhood Education program at Springfield. In August, she was denied that promotion in favor of a less-qualified, younger Latino male. Indeed, she says that she was not even allowed to interview for the position in favor of three other candidates, all of whom were less qualified than her.

Belcher filed her first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 23, 2016, alleging workplace discrimination based on race, sex, and age relating to the denial of the promotion. (Docket #22-1 at 1). On July 27, allegedly in retaliation for filing the charge, Springfield no longer allowed Belcher to teach a class on domestic violence which she had previously taught.

Consequently, on September 6, she filed a second EEOC charge, this time for retaliation for engaging in protected activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Docket #22-2 at 5). The basis for her claim was that she "was advised that [she] no longer qualified to teach a domestic violence course that [she] had previously taught." *Id.*

Next, on August 2, 2017 Springfield "terminated" Belcher's employment by "informing her that they would not be giving her any more teaching assignments." (Docket #17 ¶ 19). Belcher does not describe the nature of this communication or its precise contents in the complaint, although she states in her brief on the motion to dismiss that this was an email. (Docket #28 at 3). On October 23, she filed a third charge of discrimination, alleging race, sex, and age discrimination, as well as retaliation based on the two prior EEOC charges. (Docket #22-5 at 1). Belcher stated in the charge that "[s]ince January 2017, I have inquired about Adjunct Instructor work. However, I have not been given any [such] work." *Id.*

In the first amended complaint, Belcher asserts five counts for relief. First is a claim for racial discrimination in violation of Title VII, premised on both the denial of the promotion to adjunct lecturer and her termination. Second, she asserts an identical claim under Title VII but on a theory of sex discrimination. Similarly, the third count alleges age discrimination, in violation of the ADEA, grounded in the same facts. Belcher's fourth count alleges retaliation for engaging in protected activity, in violation of Title VII, based on "subjecting her to increased scrutiny, singling her out for selective and unwarranted discipline, [] denying Plaintiff promotional opportunities,. . .[and] ultimately terminat[ing] Plaintiff's employment in retaliation for Plaintiff exercising her rights to complain about the illegal

employment practices of Defendant." *Id.* ¶ 39. Finally, in Count V Belcher claims that Springfield violated the Civil Rights Act of 1991, 42 U.S.C. § 1981, by subjecting her to disparate employment expectations and discipline, denying her a promotion, and terminating her, all because of her race.

## 3. ANALYSIS

As the Court noted above, two competing motions are now before it. Because of the nature of the disposition of each, it will be most efficient for the Court to first address Springfield's motion for partial dismissal, then Belcher's motion to file a second amended complaint.

### 3.1 Partial Motion to Dismiss

In its motion for partial dismissal of the first amended complaint, Springfield seeks dismissal of any aspect of any claim premised on Belcher's termination, which it says was not implicated in any of Belcher's three EEOC charges. Similarly, Springfield asserts that any claim arising from heightened scrutiny or discipline is outside the scope of those charges. Springfield asks that this case be confined to the allegedly unlawful failure to promote.

Before filing a lawsuit alleging claims under Title VII and the ADEA, an individual must exhaust her administrative remedies by: (1) filing a timely charge of discrimination with the EEOC; and (2) filing suit within ninety days of receiving a right to sue letter from the EEOC with respect to the timely charge. *See Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 836 (7th Cir. 2008); *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 527 (7th Cir. 2003); *Zugay v. Progressive Care, S.C.*, 180 F.3d 901, 902 (7th Cir. 1999); *see also* 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1); 29 U.S.C. §§ 626(d), 626(e); 29 C.F.R. §§ 1626.17, 1626.18. Here, as in many employment discrimination cases, the

dispute is not about whether Belcher filed EEOC charges—she clearly did—but whether the claims she asserts in her complaint fall within the scope of the charges. *See Ajayi*, 336 F.3d at 527. It is well-settled that "[a]n aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).

To discern the scope of the EEOC charges, the Seventh Circuit instructs district courts to ask, "what EEOC investigation could reasonably be expected to grow from the original complaint?" *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 701 (7th Cir. 1999) (quotation omitted). "The complaint filed in the district court and the charge filed with the EEOC must, at a minimum, describe the same circumstances and participants." *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005). Further, "[w]hen an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994).

In performing this inquiry, courts should not punish technical defects like a failure to check a particular box on an EEOC form; rather, they must view the charge as a whole and decide whether it contains "facts that would reasonably alert the EEOC, or [the employer] for that matter, to the possibility of [a particular theory of] discrimination." *Ajayi*, 336 F.3d at 528. This is consistent with the purpose of the exhaustion requirement, which was created to give the employer "some warning of the [complained-of]

conduct" and afford "the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." *Cheek*, 31 F.3d at 500.

Springfield argues that Belcher has impermissibly expanded her claims in this action from what she brought before the EEOC. As explained above, Belcher's first EEOC charge challenged the promotion she was denied, the second referenced the denial of the opportunity to teach the domestic violence course, and the third was directed at not being assigned work as an adjunct instructor during the eight months from January to August 2017.

Springfield raises two types of claims brought in this proceeding that it says do not map onto the EEOC charges. First, none of the charges allege or reference in any way any instance of unwarranted discipline or increased scrutiny, which is part of the basis for Counts IV and V of Belcher's first amended complaint. Belcher recognizes this, as she sought to delete this aspect of her allegations in the second amended complaint. *See* (Docket #28 at 1). Because of the parties' apparent agreement on this issue, the Court need not say more about it. The portions of the first amended complaint relating to increased scrutiny and selective and unwarranted discipline will be dismissed.

Second, Springfield contends Belcher's EEOC charges do not contain factual allegations sufficient to exhaust a claim of discriminatory termination. Springfield relies heavily on the fact that the October 2017 charge does not reference her supposed termination by email in August 2017. (Docket #21 at 7). It is true, of course, that she did not use the word "termination," nor did she alert the EEOC to the August 2 email. But this is irrelevant, as the standard is not whether a fact was mentioned but whether

it would reasonably be discovered and considered during a subsequent investigation. In other words, the operative inquiry is whether the EEOC and Springfield were reasonably alerted that termination was an issue when Belcher complained that she had asked about work since January 2017 but had been given none for eight months. (Docket #22-5 at 1).

As Belcher points out, an adjunct instructor only works when she is given work. (Docket #28 at 2–3). She does not have a permanent position. Thus, refusing to give her work for two-thirds of a year could, construed generously, be viewed as an ongoing act of termination or the result of the act of termination. In either case, what matters is not that the termination decision was formalized in August 2017 but that the EEOC and Springfield would have investigated a theory of unlawful termination as part of an EEOC charge concerning a refusal to provide any work. From the face of the third charge, and under the lenient standard of review applied at the pleading stage, the Court finds that such an investigation could reasonably be expected to occur.

Springfield's arguments to the contrary are unavailing. First, while it is correct to say that certain employment-related events, including failure to promote, denial of transfer, refusal to hire, and termination, have long been viewed as "discrete acts" which should be "easy to identify," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014), this observation arises in cases where the court must determine the date the limitations period began to run. Such cases, including *Morgan* and *Adams*, have nothing to say about interpreting the scope of an EEOC charge. For that reason, the Court finds them inapposite to the present question.

Second, the Court appreciates that Belcher cited no case espousing her view of "termination," but it will not find that she thereby forfeited the argument, as Springfield requests. The Court would be within its discretion to do so, *see Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995), but given the early juncture of the case, it will not hold Belcher to a more searching review of the pertinent authorities. Greater effort will be expected should the case proceed to summary judgment.

Finally, Springfield concedes that for Belcher's claim of retaliatory discharge, there is no administrative exhaustion requirement. (Docket #21 at 8 n.7). The Court of Appeals explained in *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013), that "to avoid futile procedural technicalities and endless loops of charge/retaliation/charge/retaliation, etc., [] a plaintiff who alleges retaliation for having filed a charge with the EEOC need not file a second EEOC charge to sue for that retaliation." That is at least part of Belcher's allegation in her third charge, which raised both discrimination based on sex, age, and race and retaliation for filing her two prior EEOC charges. (Docket #22-5 at 1). Thus, Belcher's retaliatory discharge claim would survive the exhaustion challenge in any event.

This leads Springfield into its next attack, in which it posits that Belcher has not stated a plausible claim of retaliatory discharge, against the proscriptions of *Twombly* and *Iqbal*. (Docket #21 at 8–9); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a claim for retaliation under Title VII, a plaintiff must allege that she engaged in protected activity, and, as a result, was subjected to an adverse employment action. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). Springfield asserts that the lengthy temporal gap between Belcher's EEOC charges, the second of which was filed in September 2016,

and the alleged termination in August 2017 undermines any inference of retaliatory motive.

This argument overreaches when considered against the standards applied during the pleading phase. The Seventh Circuit observed in *Carlson v. CSX Transportation, Inc.*, 758 F.3d 819, 828 (7th Cir. 2014), that "a retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible." The Court of Appeals explained that "[i]f the best a plaintiff can do is allege that he engaged in protected activity and then, years later, the employer took an adverse action against him, the claim may not be permitted to proceed." *Id.* But it also cautioned that "no bright-line timing rule can be used to decide whether a retaliation claim is plausible or whether it should go to a jury." *Id.* at 829. In the case before it, the *Carlson* court found that allegations of a campaign of retaliation sufficed to overcome a five-month gap between the protected activity and the alleged retaliatory act. *Id.*

Here, Belcher alleges facts sufficient for her retaliation claim to survive a Rule 12(b)(6) challenge. She claims that she filed two EEOC charges over approximately six months, then was consistently denied any opportunity to work starting in January 2017 until she was formally terminated in August 2017. The passage of time can at this stage be explained by the contract-based nature of Belcher's employment. In other words, retaliation against Belcher must necessarily have been done over time by denying her work, as she was not performing any daily work from which she could be terminated. Thus, this case, at least as alleged in the first amended complaint, does not represent the years-long, inexplicable delay between protected activity and retaliation that is foreclosed by *Carlson*. *See*

*Majors v. Gen. Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013) ("Closeness in time between the protected activity and the adverse employment action is evidence of the causal link between the two events, but to survive summary judgment, the plaintiff must offer more evidence that supports the inference of a causal link between the two events than simply close temporal proximity.") (internal citation omitted).

For the reasons stated above, the Court is obliged to deny Springfield's motion for partial dismissal of the first amended complaint except with respect to claims of increased scrutiny and selective and unwarranted discipline.

**3.1 Motion for Leave to File a Second Amended Complaint**

In addition to opposing the motion to dismiss, Belcher filed a motion for leave to amend her complaint once again. *See* (Docket #27). In her second amended complaint, Belcher bolsters her allegations of unlawful termination by including, for instance, an allegation that failing to be given classes constitutes firing for purposes of an adjunct instructor. Additionally, she deletes the errant references to increased scrutiny and selective discipline which she no longer wishes to pursue. *See* (Docket #26).

The Court will deny the motion without considering its merits. Civil Local Rule 7 of this district requires that "[e]very motion must state the statute or rule pursuant to which it is made and. . .must be accompanied by: (1) a supporting memorandum and, when necessary, affidavits, declarations, or other papers; or (2) a certificate stating that no memorandum or other supporting papers will be filed." Civ. L. R. 7(a). If a party fails to file a supporting memorandum or a statement that no such memorandum will be filed, the Court can deny the motion outright. *Id.* 7(d).

> Belcher's motion states, in its entirety, as follows:
>
>> Plaintiff, Alice Belcher, by her attorneys Canfield & Lutz, LLC, hereby moves the Court, pursuant to F.R.C.P. 15(a)(1)(B) and F.R.C.P. 15(a)(2), for leave to amend the Complaint. Doing so will allow Plaintiff to remove an inadvertent holdover from the original pleading as well as clarify some issues with dates.

(Docket #27 at 1). Belcher did not file any supporting memorandum of law explaining why she should be granted leave to amend under Federal Rule of Civil Procedure 15. When Springfield pointed this deficiency out in its opposition (Docket #30 at 2–3), the Court expected Belcher to make up for her initial failure in a reply. She never filed one. Thus, the Court is left with no argument, no explanation, and no citation to authority beyond Rule 15 itself. Such paltry offerings are precisely why Civil Local Rule 7(d) exists.

Having offered no reasoned contentions as to why leave to amend should be granted, either initially or in reply, Belcher has forfeited any such argument. *Milligan v. Bd. of Trustees of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012). This is true regardless of whether the Court might be able to come up with sufficient reasons for her. *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010). The Court will not countenance Belcher's conduct by doing the work she should have done. Hence, Belcher's forfeiture, coupled with her non-compliance with Civil Local Rule 7(a), necessitates denial of her motion. Any future motion—whether to amend the complaint or otherwise—must comply with the rules of this Court.

4. **CONCLUSION**

Springfield's motion to dismiss relies on its own view of the facts. Those facts, construed in Belcher's favor, compel the Court to deny the motion, except as to the claims of increased scrutiny and selective and

unwarranted discipline. Additionally, because Belcher's motion for leave to file a second amended complaint falls well short of the minimum requirements for motion practice in this Court, it will be denied.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss the first amended complaint (Docket #20) be and the same is hereby **GRANTED in part** and **DENIED in part** as stated herein;

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss the original complaint (Docket #9) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a second amended complaint (Docket #27) be and the same is hereby **DENIED**. The Clerk of the Court shall strike from the record Plaintiff's proposed second amended complaint (Docket #26).

Dated at Milwaukee, Wisconsin, this 16th day of January, 2018.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge